**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| INTEGRAL WIRELESS TECHNOLOGIES LLC, | |
| *Plaintiff,* | Civil Action No. _____ |
| v. | **JURY TRIAL DEMANDED** |
| MW INTERNATIONAL VENTURES LLC d/b/a NEXA, | |
| *Defendant.* | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Integral Wireless Technologies LLC (hereinafter, "Integral Wireless" or "Plaintiff") files this Complaint for Patent Infringement against Defendant MW International Ventures LLC d/b/a NEXA ("NEXA" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.     This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

| | Patent No. | Title | Available At |
|---|---|---|---|
| 1. | 8,156,360 | Systems and Methods for Waking Wireless LAN Devices | USPTO.gov, https://ppubs.uspto.gov/pubwebap p/authorize.html?redirect=print/pd fRedirectDownload/8156360 |
| 2. | 10,033,716 | Method and Device for Publishing Cross-Network User Behavioral Data | USPTO.gov, https://ppubs.uspto.gov/pubwebap p/authorize.html?redirect=print/pd fRedirectDownload/10033716 |
| 3. | 8,073,866 | Method for Providing Content to an Internet User Based On the User's Demonstrated Content Preferences | USPTO.gov, https://ppubs.uspto.gov/pubwebap p/authorize.html?redirect=print/pd fRedirectDownload/8073866 |

| | Patent No. | Title | Available At |
|---|---|---|---|
| 4. | 7,627,805 | Data Coding with an Efficient LDPC Encoder | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7627805 |
| 5. | 8,031,654 | Wireless Communication System, Apparatus for Supporting Data Flow and Methods Therefor | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8031654 |
| 6. | 7,707,213 | Hierarchical Update Scheme for Extremum Location | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7707213 |
| 7. | 7,707,214 | Hierarchical Update Scheme for Extremum Location with Indirect Addressing | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7707214 |

2.      Integral Wireless seeks injunctive relief and monetary damages.

## PARTIES

3.      Integral Wireless is a limited liability company formed under the laws of Texas with a registered office address located at 512 W Martin Luther King Jr. Blvd., Unit 281, Austin, TX 78701.

4.      Upon information and belief, NEXA was rebranded from Social Mobile on October 16, 2025.  Christian Paul, *Social Mobile Announces Rebrand to NEXA, Ushering in the Next Generation of Enterprise Mobility*, NEXA (OCT. 14, 2025), https://nexamobility.com/news/social-mobile-announces-rebrand-to-nexa (last visited December 19, 2025).

5.      NEXA describes itself as a "[l]eading [e]nterprise [m]obility [s]olutions [p]rovider" and "an IoT design firm that specializes in developing custom devices for major companies across various industries, including healthcare, transportation, and retail." *About Us*, NEXA, https://nexamobility.com/about-us (last visited December 19, 2025).

6.      Upon information and belief, "Rhino Mobility" is NEXA's portfolio "dedicated

exclusively to enterprise-grade devices." Christian Paul, *Social Mobile Announces Rebrand to NEXA, Ushering in the Next Generation of Enterprise Mobility*, NEXA (OCT. 14, 2025), https://nexamobility.com/news/social-mobile-announces-rebrand-to-nexa (last visited December 19, 2025).

7. Upon information and belief, Rhino Mobility is a brand and/or subsidiary of Defendant that is a mere alter ego or agent of Defendant that is disregarded as an entity and is fully and directly controlled by Defendant, and any such sales of any Accused Products that include the Rhino Mobility branding are the responsibility of (and such acts directly attributed to) Defendant.

8. For example, Defendant and Rhino Mobility have the same office address in this District at 2057 Coolidge Street Hollywood, FL, 33020. *See Office Address*, NEXA, https://nexamobility.com/contact-us (last visited December 19, 2025) ("Office Address: NEXA (formerly Social Mobile) 2057 Coolidge Street Hollywood, FL, 33020 United States"); see also Office Locations, Rhino, https://rhinomobility.com/contact-us (last visited December 19, 2025) ("Office Locations: US Headquarters, 2057 Coolidge Street, Hollywood, FL, 33020, United States").

9. Upon information and belief, Defendant is the owner of Sonim Technologies, Inc. ("Sonim"). Jannelle Selan, *Sonim Technologies to be acquired by NEXA*, NEXA (JUL. 18, 2025), https://nexamobility.com/news/sonim-technologies-to-be-acquired-by-nexa (last visited December 19, 2025).

10. Upon information and belief based on public information, NEXA is a corporation organized and existing under the laws of Florida.

11. Upon information and belief based on public information, NEXA maintains its corporate headquarters at 2057 Coolidge St., Hollywood, FL 33020.

12.     Social Mobile's registered agent is Justin Brook who is located at 1175 NE 125th Street, Ste. 512, Miami, FL 33161.

## JURISDICTION AND VENUE

13.     This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–285, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. §§ 1331 and 1338(a).

14.     Defendant is subject to this Court's specific and general personal jurisdiction due at least to its substantial business in this forum, including (i) at least a portion of the infringements alleged herein; or (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in this State and in this District.

15.     Specifically, Defendant intends to do and does business in this State, directly or through intermediaries, and offers products or services, including those accused herein of infringement, to customers and potential customers located in this State, including in this District.

16.     For example, Defendant has an established place of business in this District at 2057 Coolidge Street Hollywood, FL, 33020.  *See Office Address*, NEXA, https://nexamobility.com/contact-us (last visited December 19, 2025).

17.     Defendant commits acts, and has committed acts, of infringement in this District, including, but not limited to, use of the Accused Products (identified below) and inducement of third parties to use them in an infringing manner.

18.     Upon information and belief based upon public knowledge, Defendant has committed and continues to commit acts of infringement in this District.

19.     Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b)

because it has maintained an established and regular place of business in this District and has committed acts of patent infringement in this District.

20.     Venue is also proper against Defendant in this District pursuant to 28 U.S.C. § 1391(c) because Defendant is subject to the Court's personal jurisdiction with respect to the civil action in question

## THE ACCUSED PRODUCTS

21.     Defendant uses, causes to be used, sells, offers for sale, provides, supplies, or distributes various home security platforms and systems, including, but not limited to, the "Accused Products" set forth below:

- NEXA server system ("NEXA System").

- NEXA 5G compatible devices ("NEXA 5G Devices") including, but not limited to:

  o NEXA RHINO T105, NEXA RHINO H1, NEXA RHINO D2 5G, RHINO M3501, Sonim XP Pro, Sonim XP Pro Thermal, Sonim XP Pro E, Sonim XP10, Sonim XP3plus 5G, Sonim XP400, Sonim MegaConnect, Sonim H500 Mobile Hotspot, Sonim H500 Mobile Hotspot for Verizon, and Sonim H700 Mobile Hotspot, Sonim XP Pro ultra, Sonim Enduro 5G, Sonim H500 5G, Sonim XP3plus 5G

- NEXA 4G/5G compatible devices ("NEXA 4G/5G Devices) including, but not limited to:

  o RHINO T105, RHINO H1 5G, RHINO D2 5G, RHINO C6, RHINO T80, RHINO T100, RHINO M3501, Rhino T5se, Rhino M10, Rhino C10, Rhino T8, Rhino C6R, XP Pro, XP10, XP10 for Verizon, XP5plus, XP3plus 5G, XP3plus, XP400, XP100, XP Pro Thermal, XP Pro E, Sonim Mega Connect

HPUE, Sonim Spot H500, Sonim H500 5G Mobile Hotspot for Verizon, H700 Mobile Hotspot, Sonim Spot H100 and USB W100 Portable Wi-Fi, H700 5G, XP Pro ultra, XP Pro Smart Phone, XP3plus 5G, Sonim Enduro 5G, XP5Plus, XP3Plus ultra, RS60 SmartScanner Handheld, RS80 Smart Scanner tablet,  Sonim XP3, KWSA80K, Sonim XP8, Sonim XP5s, ECOM Smart - EX 01, Sonim XP7, Sonim XP6, NEXA MoMe Gateway Handheld device

- 802.11n/ac/ax Wi-Fi compatible devices ("NEXA 802.11n/ac/ax Wi-Fi Devices") including, but not limited to:

  o NEXA RHINO T105, NEXA RHINO C6, NEXA RHINO H1, NEXA RHINO T80, NEXA RHINO T100, Sonim XP Pro, Sonim XP Pro Thermal, Sonim XP Pro E, Sonim XP10, Sonim XP10 for Verizon, Sonim XP5plus, Sonim XP3plus 5G, Sonim XP3plus, Sonim XP400, Sonim MegaConnect, Sonim USB W100 Portable Wi-Fi, Sonim H500 Mobile Hotspot, Sonim H500 Mobile Hotspot for Verizon, Sonim H700 Mobile Hotspot, and the Sonim Spot H100 4G Mobile Hotspot, Rhino T5SE, Rhino 510P, Rhino C10, Rhino T8, Rhino C6R, Social mobile X325, X401F, X301V, X301WB, H700B, Sonim XP Pro Ultra, Sonim Xp3 Plus, P200, XP3 Plus, Sonim RS60, Sonim RS80,Sonim XP3,KWSA80K, Sonim XP8, Sonim XP5s, Sonim XP7,  Sonim XP6,  Sonim XP5, ECOM Smart EX-01, XP5s

- HEVC compatible devices including ("NEXA HEVC Devices"), but not limited to:

  o Sonim XP Pro, XP Pro Thermal, XP Pro E, XP10, XP10 for Verizon, XP5plus, XP3plus 5G, XP3plus, XP400, XP Pro Ultra, RS60, RS80, XP3,

KWSA 80K, and XP 8

- Bluetooth compatible devices ("NEXA Bluetooth Devices") including, but not limited to:

  o Sonim XP Pro, XP Pro Thermal, XP Pro E, XP10, XP10 for Verizon, XP5plus, XP3plus 5G, XP3plus, XP400, XP100, P200 5G Smartphone, KWSA80K, XP8, RHINO C6, RHINO T80, RHINO T100 and RHINO T105, RHINO M10p, RHINO C6R, RHINO C6D

22.    Defendant also instruct their customers, agents, employees, and affiliates regarding how to use the Accused Products for infringing purposes. *See, e.g.*, *Rhino C6 User Manual*, RHINO MOBILITY, available at https://support.rhinomobility.com/assets/docs/c6/C6_UM_Final.pdf (last visited December 19, 2025) (providing user manual for using Rhino C6); *Rhino T105 User Manual*, available at https://rhinomobility.com/hubfs/Device%20Manuals/SM_Rhino_T105_UM.pdf?hsLang=en (last visited December 19, 2025) (providing user manual for using Rhino T105); *H1 software releases*, available at https://rhinomobility.com/h1/support (last visited December 19, 2025) (providing user instructions for using Rhino H1); *T80 software releases*, available at https://rhinomobility.com/t80/support (last visited December 19, 2025) (providing user instructions for using Rhino T80); *Rhino T100 User Manual*, available at https://rhinomobility.com/hubfs/Device%20Manuals/T100_UM_Final.pdf?hsLang=en (last visited December 19, 2025) (providing user instructions for using Rhino T100); *Device Support Guides & Drivers*, available at https://www.sonimtech.com/support/device-support-guides (last visited December 19, 2025) (providing user instructions for using Sonim devices).

23.     Defendant also import into the United States, distribute, and sell the Accused Products to end-users via the Internet and via distribution partners, retailers, reseller partners, and solution partners.  *See, e.g.*, BARCODES, https://www.barcodesinc.com/social-mobile/ (last visited December 19, 2025); BARCODE DISCOUNT, https://www.barcodediscount.com/shop?search=Social+Mobile+Rhino&cat= (last visited December 19, 2025).  Those sales occur in the United States, and throughout Florida, including in this District.

24.     For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

### COUNT I: INFRINGEMENT OF U.S. PATENT NO. 8,156,360

25.     Integral Wireless reincorporates paragraphs 1-24 as if fully set forth therein.

26.     The USPTO duly issued U.S. Patent No. 8,156,360 (hereinafter, the "'360 patent") on April 10, 2012, after full and fair examination of Application No. 12/168,706 which was filed on July 7, 2008.  *See* '360 patent at p. 1.

27.     Integral Wireless owns all substantial rights, interest, and title in and to the '360 patent, including the sole and exclusive right to prosecute this action and enforce the '360 patent against infringers and to collect damages for all relevant times.

28.     The claims of the '360 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of computer devices by wirelessly waking computer devices out of reduced power or sleep mode over a wireless local area network and by providing a network card for use with wireless devices that is capable of entering a wireless signal monitoring state and of monitoring received wireless signals while in the state

for a wake up data sequence.

29.     The written description of the '360 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

30.     Defendant has directly infringed one or more claims of the '360 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

31.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 8, 11, and 14 of the '360 patent as shown in the attached Evidence of Use Charts, which are incorporated herewith in their entirety.  *See* **Exhibit A1**. Evidence of Use Regarding Infringement of U.S. Patent No. 8,156,360; **Exhibit A2**. Evidence of Use Regarding Infringement of U.S. Patent No. 8,156,360

32.     As just one example, Defendant, through the use and provision of the Accused Products, including, but not limited to, the NEXA Bluetooth Devices, provides an apparatus comprising: a controller configured to monitor a plurality of wireless channels for a wake-up packet addressed to a wireless device during a monitor timeframe, wherein the wake-up packet is configured to cause the wireless device to initiate a transition from operating in a first power mode to operating in a second power mode, wherein the controller is configured to initiate the transition from operating the wireless device in the first power mode to operating the wireless device in the second power mode when a wake-up packet addressed to the wireless device has been received before the monitor timeframe has elapsed, and wherein the controller is configured to cease to

monitor the plurality of wireless channels when a wake-up packet addressed to the wireless device has not been received after the monitor timeframe has elapsed.

33.     Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

34.     Defendant willfully blinded itself to the existence of the '360 patent and Defendant's infringement, but Defendant had actual knowledge of the '360 patent since at least the time of receiving the original complaint in this action.

35.     Defendant has also indirectly infringed the '360 patent by inducing others to directly infringe one or more claims of said patent.

36.     Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '360 patent by providing or requiring use of the Accused Products.

37.     Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '360 patent, including, for example, claim 8 of the '360 patent.

38.     Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

39.     Defendant is performing these steps, which constitute induced infringement with the

knowledge of the '360 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '360 patent.

40.     Defendant's inducement is ongoing.

41.     Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '360 patent.

42.     Defendant has contributed to the direct infringement of one or more claims of the '360 patent by their personnel, contractors, and customers.

43.     The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '360 patent, including, for example, claim 8.

44.     The special features constitute a material part of the invention of one or more of the claims of the '360 patent and are not staple articles of commerce suitable for substantial non-infringing use.

45.     Defendant's contributory infringement is ongoing.

46.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

47.     Defendant's direct infringement of one or more claims of the '360 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

48.     Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '360 patent.

49.     Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

50.     Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '360 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

51.     Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 10,033,716

52.     Integral Wireless reincorporates paragraphs 1-24 as if fully set forth therein.

53.     The USPTO duly issued U.S. Patent No. 10,033,716 (hereinafter, the "'716 patent") on July 24, 2018, after full and fair examination of Application No.: 15/278,533 which was filed on September 28, 2016.  *See* '716 patent at p. 1.

54.     Integral Wireless owns all substantial rights, interest, and title in and to the '716 patent, including the sole and exclusive right to prosecute this action and enforce the '716 patent against infringers and to collect damages for all relevant times.

55.     The claims of the '716 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve client computing environments by summarizing cross-network user behavioral data and publishing the data to one or more data structures that become accessible to a server hosting an authorized domain when a user accesses the authorized domain.

56.     The written description of the '716 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

57.     Defendant has directly infringed one or more claims of the '716 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

58.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 1 and 3 of the '716 patent as shown in the attached Evidence of Use Charts, which are incorporated herewith in their entirety.  *See* **Exhibit B**. Evidence of Use Regarding Infringement of U.S. Patent No. 10,033,716.

59.     As just one example, Defendant, through the use and provision of the Accused Products, including, but not limited to, the NEXA System performs computer-implemented method, implemented, at least in part, by a server that includes hardware in combination with software, the method comprising: receiving, by the server, one or more memory structures that include published summarized cross-network user behavior data from a client computer, wherein the published summarized cross-network user behavior data includes: collected cross-network user

behavior data related to a user's interactions with a plurality of web sites on the client computer, the collected cross-network user behavior data being summarized on the client computer, and the summarized collected cross-network user behavior data published to the one or more memory structures on the client computer; decoding, by the server, the one or more memory structures; determining, by the server, at least one of a message or advertisement to send to a browser of the client computer based on the decoded one or more memory structures; customizing, by the server, the at least one of the message or advertisement to be responsive to the summarized cross-network user behavior data; and sending, by the server, the customized at least one of the message or advertisement responsive to the summarized cross-network user behavior data.

60.     Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '716 patent.

61.     Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT III: INFRINGEMENT OF U.S. PATENT NO. 8,073,866**

62.     Integral Wireless reincorporates paragraphs 1-24 as if fully set forth therein.

63.     The USPTO duly issued U.S. Patent No. 8,073,866 (hereinafter, the "'866 patent") on December 6, 2011, after full and fair examination of Application No. 11/377,932 which was filed on March 16, 2006.  *See* '866 patent at p. 1.

64.     Integral Wireless owns all substantial rights, interest, and title in and to the '866 patent, including the sole and exclusive right to prosecute this action and enforce the '866 patent against

infringers and to collect damages for all relevant times.

65.     The claims of the '866 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed invention includes inventive components that improve the function and operation of internet servers and client computers by providing a method of delivering content from an internet server to a user based on the user's internet navigation history by installing a profile decoder with a profile library on the server, receiving an encrypted summary of the user's navigation history, identifying user content preferences by matching the encrypted summary with available server content, and delivering content based on the identified preferences.

66.     The written description of the '866 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

67.     Defendant has directly infringed one or more claims of the '866 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

68.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '866 patent as shown in the attached Evidence of Use Charts, which are incorporated herewith in their entirety.  *See* **Exhibit C**. Evidence of Use Regarding Infringement of U.S. Patent No. 8,073,866.

69.     As just one example, Defendant, through the use and provision of the Accused Products, including, but not limited to, the NEXA System performs a method comprising the steps

of: (A) storing content on a server system, the content being accessible on said server system according to a first system of organization; (B) obtaining a profile library on the server system, the profile library using a second system of organization of content categories, distinct from said first system of organization of content categories, said profile library providing a mapping from the second system of organization of content categories to the first system of organization of content categories; (C) using the profile library to generate a map between the second system of organization and the first system of organization; (D) receiving, at the server system, a communication from a user computer in communication with the server system, at least a portion of the communication representing a summary of user navigation history on the user computer, the summary having been generated by a behavior tracking module on the user computer, and the summary including information organized according to the second system of organization of content categories; (E) in response to said receiving in (D), the server system: (e1) mapping at least some of the information from the second system of organization of content categories to the first system of organization of content categories, said mapping using the map from said second system of organization of content categories to said first system of organization of content categories, said mapping producing mapped information; (e2) selecting particular available content by the server system based at least in part on the mapped information, said particular content being selected from available content on the server system organized according to the first system of content categories; and (e3) sending the particular available content to the user computer.

70.     Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

71.     Defendant willfully blinded itself to the existence of the '866 patent and Defendant's

infringement, but Defendant had actual knowledge of the '866 patent since at least the time of receiving the original complaint in this action.

72.     Defendant has also indirectly infringed one or more claims of the '866 patent by inducing others to directly infringe said claims.

73.     Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '866 patent by providing or requiring use of the Accused Products.

74.     Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '866 patent, including, for example, claim 1.

75.     Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

76.     Defendant is performing these steps, which constitute induced infringement with the knowledge of the '866 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '866 patent.

77.     Defendant's inducement is ongoing.

78.     Defendant has also indirectly infringed by contributing to the infringement of one or

more claims of the '866 patent.

79.     Defendant has contributed to the direct infringement of one or more claims of the '866 patent by their personnel, contractors, and customers.

80.     The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '866 patent, including, for example, claim 1.

81.     The special features constitute a material part of the invention of one or more of the claims of the '866 patent and are not staple articles of commerce suitable for substantial non-infringing use.

82.     Defendant's contributory infringement is ongoing.

83.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

84.     Defendant's direct infringement of one or more claims of the '866 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

85.     Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '866 patent.

86.     Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

87.     Integral Wireless has suffered irreparable harm, through its loss of market share and

goodwill, for which there is no adequate remedy at law. Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '866 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology. The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology. The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

88.     Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,627,805

89.     Integral Wireless reincorporates paragraphs 1-24 as if fully set forth therein.

90.     The USPTO duly issued U.S. Patent No. 7,627,805 (hereinafter, the "'805 patent") on December 1, 2009, after full and fair examination of Application No. 11/448,603 which was filed on June 6, 2006. *See* '805 patent at p. 1.

91.     Integral Wireless owns all substantial rights, interest, and title in and to the '805 patent, including the sole and exclusive right to prosecute this action and enforce the '805 patent against infringers and to collect damages for all relevant times.

92.     The claims of the '805 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed invention includes inventive components that improve data transmission in communication systems by providing a method of coding data using a mother code parity check matrix and a macro matrix.

93.     The written description of the '805 patent describes in technical detail each limitation

of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

94.     Defendant has directly infringed one or more claims of the '805 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

95.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 1, 2 and 3 of the '805 patent as shown in the attached Evidence of Use Charts, which are incorporated herewith in their entirety.  *See* **Exhibit D1**. Evidence of Use Regarding Infringement of U.S. Patent No. 7,627,805; **Exhibit D2**. Evidence of Use Regarding Infringement of U.S. Patent No. 7,627,805.

96.     As just one example, Defendant, through the use and provision of the Accused Products, including but not limited to the NEXA 5G Devices and NEXA 802.11n/ac/ax Wi-Fi Devices, performs a method of coding data for transmission in a communication channel comprising: generating a codeword from a mother code parity check matrix and a macro matrix, wherein the mother code parity check matrix comprises a (j*m)-by-(k*m) matrix and includes sub-matrices that are m-by-m square matrices with cyclic structure, and wherein the macro matrix comprises a j-by-k matrix and includes elements that represent nonzero sub-matrices of the mother code parity check matrix.

97.     Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

98.     Defendant willfully blinded itself to the existence of the '805 patent and Defendant's infringement, but Defendant had actual knowledge of the '805 patent since at least the time of receiving the original complaint in this action.

99.     Defendant has also indirectly infringed one or more claims of the '805 patent by inducing others to directly infringe said claims.

100.     Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '805 patent by providing or requiring use of the Accused Products.

101.     Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '805 patent, including, for example, claim 1.

102.     Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

103.     Defendant is performing these steps, which constitute induced infringement with the knowledge of the '805 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '805 patent.

104.     Defendant's inducement is ongoing.

105.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '805 patent.

106.    Defendant has contributed to the direct infringement of one or more claims of the '805 patent by their personnel, contractors, and customers.

107.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '805 patent, including, for example, claim 1.

108.    The special features constitute a material part of the invention of one or more of the claims of the '805 patent and are not staple articles of commerce suitable for substantial non-infringing use.

109.    Defendant's contributory infringement is ongoing.

110.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

111.    Defendant's direct infringement of one or more claims of the '805 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

112.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '805 patent.

113.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

114.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '805 patent.  Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

115.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 8,031,654

116.    Integral Wireless reincorporates paragraphs 1-24 as if fully set forth therein.

117.    The USPTO duly issued U.S. Patent No. 88,031,654 (hereinafter, the "'654 patent") on October 4, 2011, after full and fair examination of Application No. 11/726,397 which was filed on March 20, 2007.  *See* '654 patent at p. 1.

118.    Integral Wireless owns all substantial rights, interest, and title in and to the '654 patent, including the sole and exclusive right to prosecute this action and enforce the '654 patent against infringers and to collect damages for all relevant times.

119.    The claims of the '654 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed invention includes inventive components that improve the function and operation of wireless communication systems by enabling more efficient handling of acknowledgment signaling in TCP-based data transfers.

120.     The written description of the '654 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

121.     Defendant has directly infringed one or more claims of the '654 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

122.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 5, 6, and 8 of the '654 patent as shown in the attached Evidence of Use Charts, which are incorporated herewith in their entirety.  *See* **Exhibit E**. Evidence of Use Regarding Infringement of U.S. Patent No. 8,031,654.

123.     As just one example, Defendant, through the use and provision of the Accused Products, including but not limited to the NEXA 4G/5G Devices, provides a wireless subscriber communication unit for use in acknowledging an allocation of resource in a wireless communication system employing transfer communication protocol (TCP) based data transfer between a network and the wireless subscriber communication unit, the wireless subscriber communication unit comprising: a receiver arranged to receive an allocation message and a TCP data segment; processing logic, operably coupled to the receiver and arranged to process the allocation message to identify an allocation of DL resources to receive the TCP data segment plus sufficient uplink (UL) resources to transfer a stand-alone acknowledgement (ACK) data segment, where the allocation of UL resources to support transmission of the stand-alone ACK data segment is based on a count performed in the network of a predetermined number of data segments

transmitted to the wireless subscriber communication unit; and a transmitter arranged to transmit the stand-alone ACK data segment in response to the message.

124.     Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

125.     Defendant willfully blinded itself to the existence of the '654 patent and Defendant's infringement, but Defendant had actual knowledge of the '654 patent since at least the time of receiving the original complaint in this action.

126.     Defendant has also indirectly infringed one or more claims of the '654 patent by inducing others to directly infringe said claims.

127.     Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '654 patent by providing or requiring use of the Accused Products.

128.     Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '654 patent, including, for example, claim 5.

129.     Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

130.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '654 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '654 patent.

131.    Defendant's inducement is ongoing.

132.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '654 patent.

133.    Defendant has contributed to the direct infringement of one or more claims of the '654 patent by their personnel, contractors, and customers.

134.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '654 patent, including, for example, claim 5.

135.    The special features constitute a material part of the invention of one or more of the claims of the '654 patent and are not staple articles of commerce suitable for substantial non-infringing use.

136.    Defendant's contributory infringement is ongoing.

137.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

138.    Defendant's direct infringement of one or more claims of the '654 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

139.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one

or more claims of the '654 patent.

140.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

141.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '654 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

142.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,707,213

143.    Integral Wireless reincorporates paragraphs 1-24 as if fully set forth therein.

144.    The USPTO duly issued U.S. Patent No. 7,707,213 (hereinafter, the "'213 patent") on April 27, 2010, after full and fair examination of Application No. 11/677,511 which was filed on February 21, 2007.  *See* '213 patent at p. 1.

145.    Integral Wireless owns all substantial rights, interest, and title in and to the '213 patent, including the sole and exclusive right to prosecute this action and enforce the '213 patent against

infringers and to collect damages for all relevant times.

146.     The claims of the '213 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed invention includes inventive components that improve the function and operation of data processing systems by organizing data into a hierarchical structure of partitions in which each level stores extrema for a group of elements from the level below which enables efficient and scalable data updates without needing to reprocess the entire dataset.

147.     The written description of the '213 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

148.     Defendant has directly infringed one or more claims of the '213 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

149.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 16, 17, and 20 of the '213 patent as shown in the attached Evidence of Use Charts, which are incorporated herewith in their entirety.  *See* **Exhibit F**. Evidence of Use Regarding Infringement of U.S. Patent No. 7,707,213.

150.     As just one example, Defendant, through the use and provision of the Accused Products, including but not limited to the NEXA HEVC Devices, performs a method for generating data, comprising: partitioning, by a computing device, a base level data set into one or more partitions in memory; generating, by the computing device, a coarse representation of extrema of

each of the one or more partitions of the base level data by finding and storing the extrema of the partitions in memory; and updating, by the computing device, the coarse representation if one or more data values of the base level data are altered, wherein the updating the coarse representation comprises finding and storing new extrema in memory from one of the one or more partitions of the base level data that includes altered data values.

151.  Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

152.  Defendant willfully blinded itself to the existence of the '213 patent and Defendant's infringement, but Defendant had actual knowledge of the '213 patent since at least the time of receiving the original complaint in this action.

153.  Defendant has also indirectly infringed one or more claims of the '213 patent by inducing others to directly infringe said claims.

154.  Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '213 patent by providing or requiring use of the Accused Products.

155.  Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '213 patent, including, for example, claim 16.

156.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing

instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

157.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '213 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '213 patent.

158.    Defendant's inducement is ongoing.

159.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '213 patent.

160.    Defendant has contributed to the direct infringement of one or more claims of the '213 patent by their personnel, contractors, and customers.

161.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '213 patent, including, for example, claim 16.

162.    The special features constitute a material part of the invention of one or more of the claims of the '213 patent and are not staple articles of commerce suitable for substantial non-infringing use.

163.    Defendant's contributory infringement is ongoing.

164.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

165.    Defendant's direct infringement of one or more claims of the '213 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless'

rights under the patent.

166.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '213 patent.

167.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

168.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '213 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

169.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 7,707,214**

170.    Integral Wireless reincorporates paragraphs 1-24 as if fully set forth therein.

171.    The USPTO duly issued U.S. Patent No. 7,707,214 (hereinafter, the "'214 patent") on April 27, 2010, after full and fair examination of Application No. 11/677,515 which was filed on

February 21, 2007. *See* '214 patent at p. 1.

172.     Integral Wireless owns all substantial rights, interest, and title in and to the '214 patent, including the sole and exclusive right to prosecute this action and enforce the '214 patent against infringers and to collect damages for all relevant times.

173.     The claims of the '214 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed invention includes inventive components that improve the function and operation of data processing systems by using a hierarchical data structure that enables efficient identification and updating of extrema based on indirect addressing of data values.

174.     The written description of the '214 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

175.     Defendant has directly infringed one or more claims of the '214 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

176.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claims 15, 16, 19 of the '214 patent as shown in the attached Evidence of Use Charts, which are incorporated herewith in their entirety.   *See* **Exhibit G**. Evidence of Use Regarding Infringement of U.S. Patent No. 7,707,214.

177.     As just one example, Defendant, through the use and provision of the Accused Products, including but not limited to the NEXA HEVC Devices, performs a method, comprising:

partitioning, by a computing device, a set of data values into one or more partitions in memory; generating, by the computing device, a coarse representation of extrema of each of the one or more partitions of the set of data values and storing indices indicative of locations of extrema in the partitions in memory; and updating, by the computing device, the coarse representation in response to altering one or more data values of the set of data values, wherein the updating comprises storing in memory indices indicative of locations of any new extrema in partitions from the one or more partitions of the set of data values that include altered data values.

178.    Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

179.    Defendant willfully blinded itself to the existence of the '214 patent and Defendant's infringement, but Defendant had actual knowledge of the '214 patent since at least the time of receiving the original complaint in this action.

180.    Defendant has also indirectly infringed one or more claims of the '214 patent by inducing others to directly infringe said claims.

181.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '214 patent by providing or requiring use of the Accused Products.

182.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '214 patent, including, for example, claim 15.

183.    Such steps by Defendant included, among other things, advising or directing

personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

184. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '214 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '214 patent.

185. Defendant's inducement is ongoing.

186. Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '214 patent.

187. Defendant has contributed to the direct infringement of one or more claims of the '214 patent by their personnel, contractors, and customers.

188. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '214 patent, including, for example, claim 15.

189. The special features constitute a material part of the invention of one or more of the claims of the '214 patent and are not staple articles of commerce suitable for substantial non-infringing use.

190. Defendant's contributory infringement is ongoing.

191. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

192.    Defendant's direct infringement of one or more claims of the '214 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

193.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '214 patent.

194.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

195.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '214 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

196.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

197.    Integral Wireless hereby requests a trial by jury on all issues so triable by right.

**PRAYER FOR RELIEF**

198.    Integral Wireless requests that the Court find in its favor and against Defendant, and that the Court grant Integral Wireless the following relief:

    a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

    b.    A permanent injunction enjoining Defendant and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '360 patent, the '866 patent, the '805 patent, the '654 patent, the '213 patent, and the '214 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patents by such entities;

    c.    Judgment that Defendant account for and pay to Integral Wireless all damages to and costs incurred by Integral Wireless because of Defendant's infringing activities and other conduct complained of herein;

    d.    Judgment that Defendant's infringements be found willful as to the '360 patent, the '866 patent, the '805 patent, the '654 patent, the '213 patent, and the '214 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

    e.    Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

    f.    That this Court declare this an exceptional case and award Integral Wireless its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.   All other and further relief as the Court may deem just and proper under the

circumstances.

Dated: <u>December 24, 2025</u>

Respectfully submitted,

By: <u>/s/ Brian R. Gilchrist</u>

Brian R. Gilchrist, FL Bar No. 774065
**ALLEN, DYER, DOPPELT + GILCHRIST, P.A.**
255 S. Orange Avenue, Suite 1401
Orlando, Florida 32801
Telephone. (407) 841-2330
Fax: (407) 841-2343
Email: bgilchrist@allendyer.com

Kristin M. Whidby (VA 91805)
**ROZIER HARDT MCDONOUGH PLLC**
1500 K Street, 2nd Floor
Washington, District of Columbia 20005
Telephone: (202) 217-0575
Email: kristin@rhmtrial.com

***Attorneys for Plaintiff INTEGRAL WIRELESS
TECHNOLOGIES LLC***

**List of Attachments**

- Civil Cover Sheet
- Proposed Summons
- Ex. A1 - Evidence of Use Regarding Infringement of U.S. Patent No. 8,156,360
- Ex. A2 - Evidence of Use Regarding Infringement of U.S. Patent No. 8,156,360
- Ex. B - Evidence of Use Regarding Infringement of U.S. Patent No.10,033,716
- Ex. C - Evidence of Use Regarding Infringement of U.S. Patent No. 8,073,866
- Ex. D1 - Evidence of Use Regarding Infringement of U.S. Patent No. 7,627,805
- Ex. D2 - Evidence of Use Regarding Infringement of U.S. Patent No. 7,627,805
- Ex. E - Evidence of Use Regarding Infringement of U.S. Patent No. 8,031,654
- Ex. F - Evidence of Use Regarding Infringement of U.S. Patent No. 7,707,213
- Ex. G - Evidence of Use Regarding Infringement of U.S. Patent No. 7,707,214

**List of Supporting Links**

1. U.S. Patent No. 8,156,360, USPTO, https://patentcenter.uspto.gov/applications/8156360.

2. U.S. Patent No. 10,033,716, USPTO, https://patentcenter.uspto.gov/applications/10033716.

3. U.S. Patent No. 8,073,866, USPTO, https://patentcenter.uspto.gov/applications/8073866.

4. U.S. Patent No. 7,627,805, USPTO, https://patentcenter.uspto.gov/applications/7627805.

5. U.S. Patent No. 8,031,654, USPTO, https://patentcenter.uspto.gov/applications/8031654.

6. U.S. Patent No. 7,707,213, USPTO, https://patentcenter.uspto.gov/applications/7707213.

7. U.S. Patent No. 7,707,214, USPTO, https://patentcenter.uspto.gov/applications/7707214.